In the Matter of LAKE CITY MANUFACTURED HOUSING INC. et al., Petitioners, v STATE OF NEW YORK TAX APPEALS TRIBUNAL et al., Respondents.

Third Department, November 25, 1992

## APPEARANCES OF COUNSEL

*Blinkoff, Viksjo, Robinson & Saeli,* Buffalo *(Joseph F. Saeli, Jr.,* of counsel), for petitioners.

*Robert Abrams, Attorney-General,* Albany *(Daniel Smirlock* of counsel), for Commissioner of Taxation and Finance of the State of New York, respondent.

## OPINION OF THE COURT

CASEY, J.

Petitioner Lake City Manufactured Housing Inc. (hereinafter petitioner) is a Pennsylvania corporation engaged in the business of manufacturing modular homes. During the relevant audit period, 85 modular homes manufactured by petitioner were sold in New York. Based upon an audit of petitioner's invoices for the 85 sales, the State Department of Taxation and Finance concluded that 23 sales for which a "roll-on" or installation charge was included on the invoice were exempt from sales tax under Tax Law § 1115 (a) (17), but were subject to use tax under Tax Law § 1110. The remaining 62 sales for which no "roll-on" charge was shown on the invoice were determined to be subject to sales tax. Notices of deficiency were issued and petitioner initiated the administrative appeal process.

At the hearing before an Administrative Law Judge (hereinafter ALJ), the Department conceded that, pursuant to *Matter of Morton Bldgs. v Chu* (126 AD2d 828, *affd on mem below* 70 NY2d 725), petitioner owed no use tax. After hearing the testimony of the sales tax auditor who conducted the field audit and petitioner's president, the ALJ sustained the determination that 62 of the 85 sales were subject to sales tax. Respondent Tax Appeals Tribunal (hereinafter respondent) sustained the ALJ's determination, resulting in this proceeding to review respondent's determination.

■ Tax Law § 1115 (a) (17) provides an exemption from sales tax for "[t]angible personal property sold by a contractor, subcontractor or repairman to a person * * * for whom he is adding to, or improving real property, property or land by a capital improvement, or for whom he is about to do any of the foregoing, if such tangible personal property is to become an integral component part of such structure, building or real property". It is undisputed that in each of the sales, the modular home manufactured by petitioner was permanently installed on the customer's land and constituted a capital improvement (see, Tax Law former § 1101 [b] [9]). The critical issue in dispute at the administrative proceeding was whether petitioner not only sold the tangible personal property, but also installed it on the customer's land. According to respondent's interpretation of Tax Law § 1115 (a) (17), petitioner's sales are exempt if petitioner installed the modular homes, but the sales are taxable if petitioner did not install the modular homes. We see nothing irrational in this interpretation, which accords plain meaning to the statutory language.

On the issue of whether petitioner was the installer as well as the seller of the modular homes, respondent made the following relevant findings. Petitioner sold its modular homes through dealers or realtors who would accompany the customer to the customer's site to determine whether a modular home could be installed on the site. Petitioner would then custom build a modular home using the customer's design. The sections of the home were shipped to the customer's site, with petitioner making all of the arrangements for shipping. Upon arrival at the site, the sections were unloaded from the truck, assembled and permanently installed on a foundation. The "roll-on" crew which performed the installation work was W. D. Construction, and in every instance petitioner contacted W. D. Construction to arrange and schedule installation.

A "roll-on" charge was listed on the customer invoice in instances where the installer had inspected the site and advised petitioner what the charge would be. When the installer had not inspected the site or there were conditions at the site which might require extra work, no "roll-on" charge was listed on the invoice. Because the invoice accompanied the home to the site, W. D. Construction sent its bill for installation services to the dealer when no "roll-on" charge was listed on the invoice. Petitioner maintained insurance on each home until it was permanently installed on its foundation, at which point title passed from petitioner to the customer.

■ Respondent concluded that in the absence of a contractor-subcontractor relationship between petitioner and the installer (W. D. Construction), petitioner did not both sell and install the modular home and, therefore, was not entitled to the exemption. In so doing, respondent rejected the testimony of petitioner's president that W. D. Construction was its subcontractor because of the absence of supporting documentation. The determination must be annulled as irrational and lacking in evidentiary support in the record.

Respondent's determination that no contractor-subcontractor relationship existed between petitioner and W. D. Construction is in direct conflict with the Department's conclusion that 23 of petitioner's sales were exempt under Tax Law § 1115 (a) (17). Inasmuch as W. D. Construction was the installer in each of those sales, it is clear that there was in fact a contractor-subcontractor relationship between petitioner and W. D. Construction for at least 23 sales and, therefore, we are of the view that respondent's finding of no contractor-subcontractor relationship in the 61 disputed sales cannot stand in the absence of evidentiary support in the record establishing a rational basis for the disparate treatment of the sales.

The Department relied exclusively upon the presence or absence of a "roll-on" charge on the invoice to determine whether a sale was exempt or taxable. Respondent agreed and also noted that for the 61 disputed sales petitioner was not billed for the installations and did not pay for them. These facts do not justify the disparate treatment accorded to petitioner's sales. The relationship between and among petitioner, W. D. Construction, the dealer and the customer was the same for all the sales: the dealer acted as petitioner's agent in effecting the sale to the customer and W. D. Construction installed the modular homes at petitioner's request. Regardless of whether a "roll-on" charge was listed on the invoice, installation of the modular home was an integral part of each sale, which was not completed by the passing of title to the customer until the home was installed. Neither the customer nor the dealer played any role in the installation of the modular homes. Petitioner arranged and scheduled the installation with W. D. Construction, and petitioner controlled the manner in which W. D. Construction installed the homes. When asked about petitioner's control over W. D. Construction's work, petitioner's president explained: "Well, there are certain things that are unique to every different manufactur-

er's home. And we have instructed him on how we want the house set and erected, how the roof goes. He's aware of all these things that are unique to our house."

The undisputed evidence in the record establishes that the relationship among the relevant parties, including petitioner and W. D. Construction, was the same, regardless of whether a "roll-on" charge was listed on the invoice. The mere fact that W. D. Construction sent its bill to the dealer instead of petitioner does not alter the relationship. The invoices in the record are addressed to the dealer. Thus, regardless of whether the installation fee is included in the invoice or billed directly by W. D. Construction, the dealer receives the bill for installation. It is apparent that in most cases both the shipping fee and installation fee, along with various options and extras selected by the customer, are separately stated items included in the total price paid by the customer, regardless of whether the installation fee is included as a "roll-on" charge on the invoice addressed to the dealer or is billed directly to the dealer by W. D. Construction.

The irrationality of determining petitioner's eligibility for an exemption based upon the presence or absence of a "roll-on" charge on the invoice for a particular sale is confirmed by the record. During the hearing, petitioner conceded that three of its sales of modular homes in New York during the audit period were sales of tangible personal property. All three sales were to a dealer in the Town of Cairo, Greene County, where the modular homes apparently were temporarily assembled as displays. Two of those sales, however, were included in the 23 sales which the Department had ruled exempt from sales tax (and later conceded were not subject to use tax) because a "roll-on" charge was listed on the invoices. As a result of the taxing authority's reliance upon the presence or absence of a "roll-on" charge to determine whether a sale was exempt, clearly a matter of form over substance, two sales which concededly should not have been exempt were exempted.

In conclusion, we note that this is not a case where respondent's determination rests on an assessment of the credibility of the testimony of petitioner's president that W. D. Construction was petitioner's subcontractor for the installation of modular homes in New York. Rather, the issue is whether the evidence in the record provides a rational basis for respondent's determination that although some of petitioner's sales in New York were exempt from sales tax, others were not exempt. In the absence of any evidence in the record that

petitioner's relationship with W. D. Construction differed from sale to sale, there is no basis for according different tax treatment to those sales. The determination must, therefore, be annulled.

MIKOLL, J. P., CREW III, MAHONEY and HARVEY, JJ., concur.

Adjudged that the determination is annulled, with costs, and petition granted.